# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Blake Olson,<br><br>Plaintiff,<br><br>v.<br><br>Stoneleigh Recovery Associates, LLC,<br><br>Defendant. | Court File No.: 10-CV-03927<br>(SRN-FLN)<br><br>**Affidavit of Blake Olson** |

STATE OF MINNESOTA )
                               ) ss.
COUNTY OF HENNEPIN )

Blake Olson, being sworn, states that:

1. I am the Plaintiff in this case and, as such, I have personal knowledge of all of the facts in this affidavit.

2. I obtained a Wells Fargo credit card account.

3. After having the Wells Fargo card for awhile, I lost my job and had to use the card to pay for some of my basic living expenses.

4. The purchases that I made with the Wells Fargo card were for personal, family, and household purposes and I did not use the account for business.

1

5.  Because I had lost my job and had trouble finding another one right away, I was unable to make regular payments to Wells Fargo.

6.  After getting back on my feet, I tried to work with Wells Fargo to pay the account back.

7.  After a few conversations, I was able to negotiate a settlement amount of $3,200.00 with Wells Fargo.

8.  Once we agreed on the settlement amount, I explained to Wells Fargo that I would need a few days to get the money together and that I would call them when I was ready to make the payment.

9.  A short time later, I called Wells Fargo to arrange for the previously agreed upon payment. I literally had my checkbook in front of me during the call so that I could make the payment that day.

10. During this call, Wells Fargo told me that it no longer owned my account and couldn't accept payment from me.

11. Wells Fargo gave me the phone number of the debt buyer that it sold my account to. I immediately called that phone number, which was the number for Main Street Acquisitions.

12. When I talked to Main Street, I explained to them that I had an agreement with Wells Fargo and asked them to honor that agreement. Main Street told me that they could not accept any payment from me at that time.

13. A short time later, Main Street sent me a collection letter. When I received the letter, I was surprised that the total balance had increased approximately $1,000.00 since my last conversation with Wells Fargo and that Main Street was not willing to accept anything less than the balance in full.

14. Because Main Street wouldn't honor the agreement I had with Wells Fargo, and because I questioned the unexplained increase in the account balance, I did not resolve the account at that time.

15. On or about February 19, 2010, I talked to Stoneleigh Recovery Associates, LLC, who told me that they had been hired by Main Street to collect my Wells Fargo account.

16. From approximately December of 2009 to August of 2010, I lived at 1023 Van Buren Ave in St. Paul, Minnesota. During this same time period, my personal phone number was 715-894-0300.

17. Even though Stoneleigh knew my phone number and had talked to me in February of 2010, Stoneleigh called my sister and brother-in-law, Claire and Brian Hubbard, sometime in April of 2010 and left them a message.

18. My sister told me later that my brother-in-law had returned Stoneleigh's call and told Stoneleigh that I did not live there and asked them not to contact him or my sister again.

19. My brother-in-law is a good friend of mine who I have know since we were kids. It was embarrassing when my younger sister and her husband, my long-time friend, were dragged into my private financial affairs.

20. My brother-in-law, who lives in a small town, and I also have many common friends. Because of the message that Stoneleigh left for my brother-in-law and sister, I was concerned that my other friends would learn that I was in collections.

Date: 8-16-11

_____
Blake Olson

Subscribed and sworn to before me
this 16th day of August, 2011

_____
Notary Public

TODD M. MURRAY
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2014